WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-24-08137-001-PCT-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Juan Carlos Osorio, | |
| Defendant. | |

The Court has set a status conference for October 23, 2025. As explained below, the purpose of the status conference will be to address various issues, including issues related to the attorney-client privilege, arising from Defendant's motion to withdraw his guilty plea.

**RELEVANT BACKGROUND**

In October 2024, Defendant was indicted on one count of assault with a dangerous weapon (Count One) and one count of assault resulting in serious bodily injury (Count Two). (Doc. 1.) Defendant initially retained Edward Hamel ("Attorney Hamel") to represent him. (Doc. 7.)

On March 20, 2025, a change-of-plea hearing took place before Magistrate Judge Willett. (Doc. 20.) Defendant pleaded guilty to Count Two of the indictment pursuant to a plea agreement. (Doc. 21.) Defendant specifically avowed in the plea agreement that he was "voluntarily agree[ing] to it"; that he had "discussed the case and [his] constitutional and other rights with [his] attorney"; that his "guilty plea [was] not the result of force,

threats, assurances, or promises, other than the promises contained in this agreement"; and that he "voluntarily agree[d] to the provisions of this agreement and . . . agree[d] to be bound according to its provisions." (*Id.* at 7-8.) Defendant also avowed that he was "satisfied that [his] defense attorney has represented [him] in a competent manner." (*Id.* at 9.) Additionally, Attorney Hamel signed the plea agreement and avowed that he had discussed an array of specific matters with Defendant, including "the factual basis for and the nature of the offense to which the guilty plea will be entered [and] possible defenses." (*Id.*)

The transcript from the March 20, 2025 change-of-plea hearing is consistent with these representations. During the change-of-plea hearing, Defendant avowed, *inter alia*, that Attorney Hamel had explained what the government would need to prove to find him guilty of the charges in the indictment; that he understood Attorney Hamel's explanation; that Attorney Hamel answered all of his questions about the plea agreement; that he understood the plea agreement; that he had enough time to speak with Attorney Hamel before coming to court; that he was satisfied with Attorney Hamel's representation; that nobody had threatened, forced, or coerced him into pleading guilty; and that he was voluntarily pleading guilty. (Doc. 41 at 5-8.) Defendant also avowed that he understood that "by pleading guilty instead of going to trial," he was "giving up [his] right to present all the possible defenses that [he] might have to these charges." (*Id.* at 15.)

On March 21, 2025, Judge Willett issued findings and recommendations concerning Defendant's guilty plea. (Doc. 22.) Among other things, Judge Willett found that "the plea of guilty by Defendant has been knowingly, intelligently, and voluntarily made" and recommended that the Court accept the guilty plea. (*Id.* at 2-3.) Judge Willett also provided Defendant with a 14-day period to file objections. (*Id.* at 3.)

On April 8, 2025, after no objections were filed, the Court adopted Judge Willett's findings and recommendations and accepted Defendant's guilty plea. (Doc. 23.)

On May 9, 2025—just over three weeks before the then-scheduled sentencing date of June 2, 2025 (Doc. 20)—Defendant filed a stipulation to replace his original retained

counsel, Attorney Hamel, with new retained counsel, Todd Romero ("Attorney Romero"). (Doc. 27.) The stipulation was granted. (Doc. 28.) Attorney Romero subsequently filed two motions to continue sentencing, eventually resulting in a new sentencing date of Monday, September 15, 2025. (Docs. 30, 31, 33, 34.)

On the afternoon of September 12, 2025—the Friday before the Monday sentencing—Defendant filed a motion to withdraw his guilty plea. (Doc. 38.) The basis for the withdrawal request is as follows:

> After reviewing the discovery materials and the presentence report (PSR) with defendant, undersigned counsel discovered that defendant felt coerced into pleading guilty from previous legal counsel and a number of legal issues had not been properly vetted. Undersigned counsel discussed these matters with Mr. Osorio, at CCA-Florence, who informed undersigned counsel that he was unaware that self-defense could be asserted as a defense in an assault case. Unsigned [sic] counsel has met with Mr. Osorio four times at CCA to discuss and review discovery, and Mr. Osorio has informed counsel of his desire to withdraw from the plea each time. It also appears that previous counsel did not provide adequate representation due to communication issues that led Mr. Osorio to make an uninformed or involuntary plea. Mr. Osorio first language is Spanish and speaks basic English. According to Mr. Osorio previous counsel spoke English to him during their meetings at CCA. Due to pressure from previous counsel, Mr. Osorio decided to plead guilty and accept the government's proposed plea offer. Mr. Osorio did not knowingly and intelligently enter a plea of guilty.

(*Id.* at 2.) The motion is not supported by a declaration from Defendant or from any other witness. Nor does the motion include a request for an evidentiary hearing.

On September 15, 2025, the parties appeared for sentencing. (Doc. 39.) Due to the late timing of Defendant's motion to withdraw his guilty plea, the Court postponed sentencing until November 3, 2025 and set a briefing schedule on Defendant's motion. (*Id.*) Attorney Romero also provided the following explanation for the late timing of the motion: "Mr. Osorio was born in Mexico. He came to the U.S. as a young kid. He went to elementary school here in the U.S. up to the 7th, 8th grade. He's not fluent in English. And I know that he previously communicated with his prior counsel in English only. And I don't know if there were some issues that were lost in translation, but every time that Mr.

- 3 -

1  Osorio felt that he didn't want to take the plea, he felt he was unfairly pressured into taking
2  the plea, that he didn't really understand all of the legal issues until he discussed them with
3  me.  I struggled just because I know the high burden that I have to meet, but . . . I should
4  have filed something more timely." (Doc. 46 at 4.)  The Court, in turn, noted, "without
5  prejudging" the issue, that "there may be some sort of waiver of the attorney-client
6  privilege" as to Attorney Hamel because the adequacy of his representation had "been put
7  at issue by the defense's motion here." (*Id.* at 5.)  The Court encouraged the parties to
8  address the privilege issue in their subsequent motion papers. (*Id.*)

9  On September 26, 2025, the government filed its response in opposition to
10 Defendant's motion to withdraw his guilty plea. (Doc. 44.)  In a nutshell, the government
11 contends that although "Defendant asserts that his previous counsel pressured Defendant
12 into pleading guilty and suggests that his plea was not knowing and voluntary because of
13 his basic understanding of English," "[t]here is nothing in the record in this case to support
14 these unsworn allegations, and Defendant's related case, D. Ariz. Case No. 24-MJ-06138-
15 ASB, likewise contains no indication that Defendant was unable to understand the Court,
16 his counsel, and the proceedings against him.  To the contrary, the record indicates that
17 Defendant's guilty plea was knowing, voluntary, and intelligent.  United States Magistrate
18 Judge Willett conducted a thorough plea colloquy in this case, during which Defendant
19 swore under oath that he understood the charges and maximum penalties, understood his
20 plea agreement, was satisfied with his attorney, and was not forced, threatened, or coerced
21 to plead guilty." (*Id.* at 1.)  Additionally, the government contends that "[k]nowledge of
22 self-defense would not have plausibly motivated a reasonable person in Defendant's
23 position to forgo pleading guilty, and this Court should not allow Defendant to use
24 attorney-client privilege as both a sword and a shield." (*Id.* at 2.)  The government thus
25 asks the Court to "summarily deny Defendant's Motion.  Should the Court grant the
26 defense an evidentiary hearing, however, the government requests that hearing be held on
27 November 3, 2025, and that the parties proceed to sentencing that same day should
28 Defendant fail to introduce insufficient to meet his burden.  This will allow the government

1 necessary time to obtain affidavits from previous defense counsel, while avoiding further delay that would deprive the victim closure." (*Id.*)

October 3, 2025 was Defendant's deadline to file a reply in support of his motion. (Doc. 47.) When that deadline came and went without any submission, the Court *sua sponte* extended the deadline to October 14, 2025. (*Id.*) That deadline has now expired and Defendant still has not filed a reply.

On October 20, 2025, the government filed a "motion regarding attorney-client privilege." (Doc. 48.) The motion asserts that because Defendant has raised a claim of ineffective assistance of counsel regarding Attorney Hamel, Defendant has waived the attorney-client privilege with respect to at least some of his communications with Attorney Hamel. (*Id.* at 2-3.) The government thus "seeks the authority to secure a written declaration from Mr. Hamel, and testimony, if necessary. Undersigned counsel has contacted Mr. Hamel, who does not prefer to provide an affidavit/declaration with regard to Defendant's allegations in absence of a court order. Although not every possible section of that declaration can be anticipated until a conversation with Mr. Hamel takes place, it is anticipated that such declaration would include statements encompassing any and all conversations that Defendant had with Mr. Hamel about: alleged pressure by Mr. Hamel to cause Defendant to plead guilty; the timing and manner in which Mr. Hamel communicated the plea offer to Defendant; the specific advisements Defendant received about his plea agreement; and discussions regarding the plea agreement, trial strategy, witnesses, and investigation of matters." (*Id.* at 3.) The government also asks the Court to set a deadline of October 24, 2025 for Defendant to decide whether to withdraw his motion to withdraw his guilty plea and asserts that, if Defendant withdraws his motion, the government will not seek a declaration from Attorney Hamel. (*Id.* at 4.) Finally, the government asserts that it raised these issues with Attorney Romero on October 6, 2025, but he has failed to respond. (*Id.* at 4.)

…

…

**DISCUSSION**

During the status conference on October 23, 2025, Attorney Romero shall be prepared to address his failure to file a reply brief by the original deadline of October 3, 2025 or by the *sua sponte* extended deadline of October 14, 2025, as well as his apparent failure to respond to the government's October 6, 2025 inquiry regarding waiver of the attorney-client privilege.

Attorney Romero also shall be prepared to clarify which materials of evidentiary significance, if any, Defendant intends to proffer in support of the motion to withdraw Defendant's guilty plea and whether an evidentiary hearing is requested. At present, Defendant has submitted no evidence to support his withdrawal request. Although Attorney Romero has made various representations, in the motion to withdraw Defendant's guilty plea and during the September 15, 2025 hearing, regarding Defendant's alleged unawareness of the possibility of raising a claim of self-defense, regarding the alleged pressure to plead guilty that Attorney Hamel exerted on Defendant, and regarding Defendant's alleged language difficulties, "the arguments and statements of counsel are not evidence." *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002) (cleaned up). Without any evidence, it is unclear how Defendant could meet his burden of establishing an entitlement to relief under Rule 11(b)(2). *See generally United States v. Nostratis*, 321 F.3d 1206, 1208 (9th Cir. 2003) ("Prior to sentencing, a defendant can withdraw his guilty plea only by showing a fair and just reason for withdrawal. A defendant does not always have the right to withdraw a plea because the decision to allow withdrawal of a plea is solely within the discretion of the district court. The defendant has the burden to show a fair and just reason for withdrawal of a plea.") (citations omitted).

Finally, assuming that further evidentiary development is required, the Court will need to resolve the government's request to obtain a declaration from Attorney Hamel. At first blush, it appears the government's request has merit. Because "[e]rroneous or inadequate legal advice may . . . constitute a fair and just reason for plea withdrawal,"

*United States v. McTiernan*, 546 F.3d 1160, 1167 (9th Cir. 2008), the substance of at least some of Attorney Hamel's communications with Defendant—including whether Attorney Hamel discussed the possibility of a self-defense claim with Defendant and/or improperly "pressured" Defendant into pleading guilty—has been placed at issue. Many courts have found that a waiver of the privilege occurs in this circumstance. *See, e.g.*, *United States v. Gibson*, 2024 WL 1656586, *5 (D. Utah 2024) ("Defendant Gibson, in moving to withdraw his guilty pleas, alleges various ways in which the advice and conduct of his former counsel, Matthew Adams and Marissa Kingman, caused him to receive ineffective assistance of counsel during the negotiation of and entry into the plea agreements . . . [and thus] impliedly waived his attorney-client privilege and work-product protection for all (i) communications between Gibson and his former counsel and (ii) his former counsel's work product, both categories being limited to the scope of Gibson's waiver, which relates to the negotiation, understanding, and acceptance of Gibson's plea agreements in the 20-441 and 22-320 Actions. The existing record does not provide enough information for the Court to evaluate Gibson's claims or allegations of ineffective assistance of counsel. Good cause therefore exists to permit Gibson's former counsel to disclose privileged communications with Gibson, within the scope of Gibson's waiver . . . . To that end, former counsel shall prepare and serve all parties with an affidavit, including any supporting documents, responding to Gibson's claims within 45 days after the entry of this Memorandum Order."); *United States v. Ahmed*, 2017 WL 6271262, *3 (D. Utah 2017) ("The attorney-client privilege is also waived if a party puts his counsel's advice in issue. Such a waiver occurs when a defendant, in an attempt to withdraw a guilty plea, claims that counsel provided erroneous advice about the consequences of the guilty plea.") (citation omitted); *United States v. Collyard*, 2013 WL 1346202, *1 (D. Minn. 2013) ("In connection with Defendant's Motion to Withdraw His Guilty Plea, the Court previously ruled that by challenging his former counsel's representation, Defendant had waived the attorney-client privilege and the Government was therefore entitled to discovery on certain relevant communications between Defendant and his former counsel, Thomas Brever."); *United*

*States v. Davis*, 583 F.3d 1081, 1090 (8th Cir. 2009) ("Davis waived the attorney-client privilege as to his discussions with his attorney during the plea agreement negotiations . . . when Davis asserted he should be able to withdraw his guilty plea based on the erroneous advice of his appointed counsel."). As the Fifth Circuit aptly put it:

> Courts earnestly pursuing reality would be hard put to justify a rule that would allow a defendant circumstanced as Woodall here to assert that his solemn pleas of guilty were negated for lack of accurate information of sentence consequences, then permit him to run a procedural trap play that would block the development of the plain truth which shows his own attorney told him exactly what he could expect. Not only does this specious sophistry fail to protect confidential relationships, it trifles with the truth— it scoffs at justice— and we reject it flatly.

*United States v. Woodall*, 438 F.2d 1317, 1326 (5th Cir. 1970). Moreover, although the Court is unaware of any Ninth Circuit decision specifically holding that the attorney-client privilege is waived in this circumstance, such an outcome is consistent with the Ninth Circuit's rule that a litigant may "waive[] the attorney-client privilege by putting the lawyer's performance at issue during the course of litigation," which "means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials. The party asserting the claim is said to have implicitly waived the privilege." *Bittaker v. Woodford*, 331 F.3d 715, 718-19 (9th Cir. 2003).

Accordingly, at the status conference, Attorney Romero shall be prepared to address the government's request for an order compelling Attorney Hamel to provide a declaration, including whether Defendant objects to this request (and if so, on what basis).

Dated this 22nd day of October, 2025.

Dominic W. Lanza
United States District Judge